UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
Michele Jean-Jaques, Guardian of Ricardo Michel
Jean-Pharuns,

                           Plaintiff,

               -against-

Jason Albin, in his individual capacity, New York City
Department of Education, City of New York, John Doe's
#1 - #10,

                        Defendants.
------------------------------------------------------------------X

CV 14-1438

AMENDED
<u>COMPLAINT</u>

        Plaintiff, Michele Jean-Jaques, guardian of Ricardo Michel Jean-Pharuns, as and for his complaint, alleges the following:

***PARTIES***

    1.     Plaintiff Michele Jean-Jaques ("Plaintiff" or "Ms. Jaques"), guardian of Ricardo Michel Jean-Pharuns, is the appointed guardian of the person and property of Ricardo Michel Jean-Pharuns.

    2.     Plaintiff is and was at all times relevant herein a citizen of the United States, and is and was at all times relevant herein resides in Kings County, New York.

    3.     At all times relevant hereto, Ricardo Michel Jean-Pharuns ("Mr. Pharuns") was and is an African American male who is a member of one or more minority groups, as that terms is defined in Chapters 1981, 42 U.S.C. § 1983 of the United States Code.

    4.     At all times relevant hereto, Mr. Pharuns was and is a permanently intellectually disabled person and was an incompetent minor at the commencement of this action.

    5.     Mr. Pharuns was and is at all times relevant herein a citizen of the United States, and was and is at all times relevant herein resides in Kings County, New York.

6.      Defendant, Jason Albin (hereinafter, "AP Albin,") was and is the Assistant Principal of the Coy L. Cox School P.369K @ AIL (hereinafter the "Cox School") and is an employee of the New York City Department of Education and named in his individual capacity.

7.      Defendant, the City of New York (hereinafter, "City"), was and is a municipal corporation organized and existing pursuant to New York State law.

8.      Defendant New York City Department of Education (hereinafter, "DOE"), is a subordinate department under the sole and exclusive control of the Defendant City.

9.      Defendant JOHN DOES #1 - #10, as yet identified, were acting in their capacity as agents, servants and employees of the Defendant City, and the DOE, and within the scope of their employment as such. The John Doe defendants are being sued in their individual capacities.

10.     At all times relevant herein, the Defendants were acting under color of state law in the course and scope of their duty and functioned as agents, servants, employees, and officers of the City of New York and the DOE, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duty. The Defendants were acting for and on behalf of the DOE at all times relevant herein, with the power and authority vested in them as officers, agents, and employees of the DOE and incidental to the lawful pursuit of their duty as officers, employees and agents of the DOE.

### *JURISDICTION*

11.     This action is brought pursuant to 42 U.S.C. §1983 and the Fourteenth Amendment to the United States Constitution.

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (4) and the aforementioned statutory and constitutional provisions.

### *VENUE*

13.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391 (b)(1) and (2), as well as (c)(1) and(c)(2); and § 1402 (b) because the claims arose in this district.

### *STATEMENT OF CLAIM*

14.      This is an action to recover money damages arising out of Defendants' violation of Plaintiff's rights as secured by the Civil Rights Act, 42 U.S.C. Section 1983 and rights secured by the Fourteenth Amendment to the United States Constitution. Mr. Pharuns sustained injuries as a result of Defendants deliberate indifference and gross negligence by failing to act on DOE generated information that Mr. Pharuns: (1) had a documented history of repeatedly running away from a DOE school while under DOE school custody and control, (2) was a "flight risk," and (3) needed to be adequately, closely and constantly supervised at all times.

15.      Defendants Jason Albin as Cox Assistant Principal, and DOE, through its John Doe Superintendent, as final policy makers created a policy or custom through deliberate indifference to the constitutional rights of Mr. Pharuns that caused the ultimate harm that befell Mr. Pharuns.

### *FACTS*

16.      Ricardo Michel Jean-Pharuns was born on October 27th, 1993.

17.      Mr. Pharuns was born four weeks premature via cesarean section and in breech position.

18.      Though he reached physical milestones within normal limits, Mr. Pharuns' speech was significantly delayed and did not utter words until he was two-and-a-half years of age.

19.      At five years old, Mr. Pharuns was diagnosed by his family physician,

Dr. Teqflia, who detected high lead levels in Mr. Pharuns' blood.

20.     Dr. Teqflia concluded that Mr. Pharuns had lead poisoning and diagnosed Mr. Pharuns as being permanently intellectually disabled.

21.     Mr. Pharuns' intellectual disability diagnosis necessitated that he attend special education schools within the New York City Department of Education school system.

22.     In July of 2010, at the age of 16, Mr. Pharuns was a student who attended the Coy L. Cox School P.369K.

23.     As of July 2010, while a student at the Cox School, Mr. Pharuns wandered and/or ran away from the Cox and/or other DOE schools during school hours, while under DOE school custody and control on six prior occasions.

24.     The DOE John Doe John Doe Superintendent, AP Albin, and Cox School staff, knew as early as December 11, 2008 that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

25.     In July of 2010 the Cox School District Representative, Speech teacher and Job developer had actual and constructive notice that: Mr. Pharuns posed a flight risk, needed a small structured class with constant supervision and positive reinforcement, required a busing paraprofessional, needed close supervision, was unable to travel safely and placed himself in jeopardy when Mr. Pharuns was alone.

26.     In July of 2010 the DOE John Doe Superintendent, AP Albin, and Cox School staff had actual and constructive notice that Mr. Pharuns had a history of running away from home and a DOE/Cox School for extended periods of time while under DOE school custody and control.

4

27.     In July of 2010 the DOE John Doe Superintendent, AP Albin and Cox School staff had actual and constructive notice of six prior DOE documented OORS cases in which Mr. Pharuns had run away from a DOE/Cox School for extended periods of time while under DOE school custody and control.

28.     The foregoing is illustrative of the defendants' actual and constructive notice of Mr. Pharuns history of running away from a DOE/Cox School while a DOE student during school hours under DOE school custody and control.

### *December 11, 2008 DOE occurrence report*

29.     On December 11, 2008 DOE employee Jeanne Jimenez-Secretary ("Ms. Jimenez) generated a DOE occurrence report regarding Mr. Pharuns disappearance after leaving his home to wait for the school bus.

30.     Ms. Jimenez's occurrence report reflected that at 9:00 am on December 11, 2008 Ms. Jaques contacted the Cox School and subsequently informed the staff that Mr. Pharuns was missing and that she contacted the 70th pct.

31.     A picture and description of Mr. Pharuns was forwarded to Michele Pierro at District 75.

32.     On December 15, 2008 AP Albin provided an update to the December 11, 2008 occurrence report and stated in part "the student returned home, on his own, Friday night."

33.     AP Alvin stressed the importance of adult supervision at all times regarding the school bus drop off and pick up for Mr. Pharuns.

34.     Ms. Jimenez reflected in her December 11, 2008 DOE report that both the New York City Police Department and DOE John Doe Superintendent were contacted at 9:45am on 12/11/2008 regarding the incident.

5

35.     Upon such notification, the Defendants had actual and constructive knowledge that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

### March 3, 2009 DOE occurrence report

36.     On March 3, 2009 Ms. Jimenez generated a DOE occurrence report regarding Mr. Pharuns disappearance while at his designated school bus stop.

37.     Ms. Jimenez's report reflected: on February 27, 2009 Ms. Jaques contacted the Cox School and informed staff that Mr. Pharuns had ran away from her while waiting for the school bus on February 25, 2009 at approximately 8:00 am.

38.     Ms. Jimenez noted in her DOE occurrence report that as of Tuesday, March 3, 2009 Mr. Pharuns was still missing.

39.     On March 4, 2009 AP Albin provided an update to the March 3, 2009 DOE occurrence report and stated: on Tuesday, March 3, 2009, he called the 70th Precinct and obtained Mr. Pharuns' missing report case number 01609.

40.     On March 9, 2009 AP Albin provided another update to the March 3, 2009 DOE occurrence report and stated: Mr. Pharuns was found in Flushing NY, on March 5, 2009 and that Mr. Pharuns said he went to his lawyer's office and got lost coming back.

41.     Accordingly, the Defendants had actual and constructive knowledge that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

### May 21, 2009 DOE occurrence report

42.     On May 21, 2009 Ms. Jimenez generated a DOE occurrence report regarding Mr. Pharuns disappearance while waiting with his brother for the school bus.

43.     Ms. Jimenez's DOE occurrence report reflected that on May 21, 2009 at 8:20 am Ms. Jaques contacted the Cox School and informed the school that Mr. Pharuns ran off again.

44.     Ms. Jaques called 911 and soon thereafter officers form the 77th precinct responded and took a missing child report.

45.     Ms. Jimenez reflected in her DOE occurrence report "this was the fourth time that Mr. Pharuns had ran off this year and the second time in a week."

46.     Ms. Jimenez also reflected in her DOE occurrence report that both the NYPD and DOE John Doe Superintendent were contacted at 8:35 am on May 21, 2009.

47.     On June 1, 2009 Rudy Giuliani provided an update to the May 21, 2009 DOE occurrence report and stated: Mr. Pharuns was returned home on Wednesday, May 27th feeling ill. Mr. Giuliani noted that Ms. Jaques took Mr. Pharuns to the doctor on Thursday and was diagnosed as having the flu.

48.     The Defendants had actual and constructive knowledge that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

### *May 12, 2010 New York City Dept. of Education Individualized Education Program Annual review conference*

49.     On May 12, 2010 a New York City Department of Education Individualized Education program conference (hereinafter "DOE conference") was held regarding Mr. Pharuns' annual review.

50.     The DOE Conference was attended by Ms. Jaques and DOE employees listed in their respective work capacities as a District Representative, Special Education teacher, Speech teacher and Job developer.

51.     A comprehensive report was prepared and generated by the DOE that evaluated Mr. Pharuns along the foregoing nine enumerated categories: (1) Academic performance and learning characteristics, (2) Social/emotional performance, (3) Health and physical development, (4) annual goals and short term objectives, (5) School environment and service recommendations, (6) Other programs/services considered and reasons for rejection, (7) Participation in school activities, (8) Related service recommendations and participations in assessments and (9) Transition.

52.     Reflected in the Social Emotional performance category was an entry that listed the following: Ricardo is a 15-year old student who poses a "flight risk." Ricardo needs a small structured class with constant supervision and positive reinforcement.

53.     Reflected in the Other programs/services considered and reasons for rejection category was an entry that listed the following: Ricardo still continues to require a busing paraprofessional as he needs close supervision. He is unable to travel safely and has placed himself in jeopardy when he is alone.

54.     As evidenced by the Annual review report the DOE employees that attended the DOE conference (District Representative, Special Education teacher, Speech teacher and Job developer), had constructive and actual notice that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control

55.     Irrespective of such actual and constructive knowledge that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision, the very next day after the DOE conference, Mr. Pharuns, yet again, wandered away from Cox School while under DOE school custody and control during school hours.

### *May 13, 2010 DOE Occurrence report*

56.     On May 13, 2010 Mr. Pharuns wandered away from school while under DOE school custody and control during school hours; for the sixth time.

57.     On May 21, 2009 Ms. Jimenez generated a DOE occurrence report regarding Mr. Pharuns leaving the Cox School while under DOE school custody and control during school hours in which she relayed the following:

> "A 16 year old male student, Ricardo Jean Pharuns, classified as mentally retarded brought up groceries from a field trip to the supermarket. When he finished putting away the groceries, he asked to go to the bathroom and ran out of the building instead. Officers of the 84th pct., was notified. The student has a history of running away from home and school for extended periods of time."

58.     Ms. Jimenez also stated: Prior OORS cases from running from school are:

- 121108-0046
- 022709-0078
- 051409-0121
- 052109-0126
- 072309-0006

59.     Significantly, Ms. Jimenez acknowledged that Mr. Pharuns had a history of "running from school," and referenced five other OORS cases in which Mr. Pharuns had ran away from school.

60.     Ms. Jimenez reflected in the May 13th, 2009 occurrence report that the DOE John Doe Superintendent was contacted at 12:50pm on May 13, 2010.

61.     Thus, the defendants were aware of and had actual and constructive notice that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

9

62.     On May 14, 2010 AP Albin submitted an update to the DOE May 13th, 2010 occurrence report which read: At 11:45am, administration was informed Ricardo, a student classified as "Mentally Retarded," was not at lunch and was missing. A search of the bathrooms, classrooms and each floor was conducted. Staff even went outside to the train stations and other familiar areas looking for him. Video cameras were used to determine Ricardo left the building at 11:26 through the Johnson Street side (where outside students arrive and are dismissed from).

63.     On May 24, 2010 at 9:52am AP Albin submitted another update regarding the May 13, 201 DOE occurrence report and stated:  On Saturday, May 22nd the police found Ricardo on the F train in Coney Island. He was brought home by police. His mother kept him home from school on Monday, May 24th to take him to the doctor.

64.     Thus, the defendants were aware of and had actual and constructive notice that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control.

***Defendants' failure to adequately, closely, and constantly supervise Mr. Pharuns enabled him, for the seventh time, to leave Cox school while under DOE custody on July 27, 2010. Mr. Pharuns subsequent arrest and injuries sustained while missing was directly attributable to Defendants foregoing failures.***

65.     On or about July 27th, 2010, Mr. Pharuns was present at the Cox School under the DOE's custody and control, during school hours.

66.     On said date, Mr. Pharuns, for the seventh time, "went missing," when John Doe, who was scheduled to give him a ride home from school (presumably a para professional or school bus aide), failed to appear at the Cox School.

67.     Predictably, Mr. Pharuns, as he had done on six prior occasions, simply left the DOE Cox School and attempted, by himself, to find his way home.

10

68.     Despite the Defendants constructive and actual notice that Mr. Pharuns was a "flight risk" and in need of adequate, close, constant supervision while under DOE school custody and control, Defendants acted with deliberate indifference and negligently permitted Mr. Pharuns, for the seventh time, to wander away from the Cox School/ DOE school while under DOE school custody and control.

69.     As a result of the Defendants breach of duty to adequately, closely, constantly supervise and ensure Mr. Pharuns' safety while under DOE school custody and control Mr. Pharuns suffered physical, emotional and psychological injuries.

70.     Mr. Pharuns' injuries were not attributable to his own or parental negligence.

71.     Mr. Pharuns, because of his well-documented history of permanent intellectual disability, difficulty focusing and concentrating, and propensity for confusion, was missing for several days after July 27th, 2010.

72.     Ms. Jaques subsequently filed a Missing persons report at the NYPD's 70th Precinct in Brooklyn.

73.     Due to Mr. Pharuns' permanent intellectual disability, difficulty focusing, concentrating and a propensity for confusion he tried to board a train at the Schermerhorn subway station without a Metro card on August 2, 2010.

74.     Despite having timely and proper notice of Mr. Pharuns permanent intellectual disability and missing person's status, the NYPD placed Mr. Pharuns under arrest on or about August 2nd, 2010, at the Schermerhorn Train Station in Brooklyn for attempting to enter the New York City subway system without a Metro card.

75.     During the course of his arrest Mr. Pharuns was pepper sprayed, placed in a choke hold, thrown onto the ground, and repeatedly punched by NYPD police officers.

76.     Mr. Pharuns sustained injuries and was immediately taken to the hospital upon his release at this arraignment.

77.     On August 3, 2010 Ms. Jaques took Mr. Pharuns to the Kings County Hospital Emergency Department for treatment of his injuries.

78.     Mr. Pharuns was treated by attending Physician Jennifer Chao and was later discharged.

79.     A complaint was filed by Ms. Jaques with the Civilian Complaint Review Board regarding Mr. Pharuns' arrest.

80.     On February 11, 2011 the CCRB exonerated PO Jaswant Dyal regarding the peppery spray claim and deemed unsubstantiated the choke hold claim levied against him.

81.     The criminal complaint against Mr. Pharuns was later adjourned in contemplation of dismissal and subsequently dismissed.

82.     Mr. Pharuns suffered and continues to suffer emotional and psychological effects from his encounter with the NYPD police officers and subsequent arrest.

83.     Mr. Pharuns is now, at all times, fearful of all police officers and suffers from recurring nightmares regarding his physical restraint, assault, confrontation and arrest by the NYPD police officers.

84.     Mr. Pharuns relayed his fears to his mother (Ms. Jaques) and also complained of experiencing recurring headaches since his encounter with the NYPD police officers.

85.     On March 30, 2011 Ms. Jaques took Mr. Pharuns to Total Neuro Care P.C. for a neurological consultation.

86.     Mr. Pharuns was treated by RC Krishna, MD (hereinafter "Dr. Krishna") and relayed to her that he had periodic episodes of headaches for the past six months.

87.     Dr. Krishna who reflected in her notes that Mr. Pharuns was a candidate for a neuropsychological and would be evaluated with a vestibular evaluation for his dizziness. Dr. Krishna stated that Mr. Pharuns would be reassessed.

88.     Dr. Krishna further noted that her prognosis was guarded due to the nature, severity, and permanency of Mr. Pharuns injuries.

89.     Mr. Pharuns injuries are directly attributable to the Defendant Jason Albin's deliberate indifference and gross negligence by failing to adequately, closely, constantly supervise and ensure Mr. Pharuns safety while under DOE school custody and control despite actual and constructive notice of DOE generated information that Mr. Pharuns: (1) had a documented history of repeatedly running away from the Cox School/DOE school while under DOE school custody, (2) was a "flight risk" and (3) needed to be closely supervised at all times.

90.     The ultimate harm that befell Mr. Pharuns and injuries he sustained are directly attributable to the Defendants Jason Albin as Cox Assistant Principal, and DOE, through its John Doe Superintendent, as final policy makers, creation of a policy or custom through deliberate indifference to the constitutional rights of Mr. Pharuns, whereby Defendants failed to adequately, closely, constantly supervise and ensure the safety of Mr. Pharuns while under Cox School/DOE school custody and control.

91.     By reason of the foregoing, Mr. Pharuns has been damaged in sums above the jurisdictional threshold of this Court.

## FIRST CAUSE OF ACTION

92.     The Plaintiff repeats and realleges each and every allegation set forth above numbered "1" through "91" inclusive with the same force and effect as if more fully set forth at length herein.

13

93.     The defendant Assistant Principal Jason Albin, as an employee of the New York City Department of Education was acting under color of State law at all times regarding the events complained of herein.

94.     The defendant Assistant Principal Jason Albin had personal involvement regarding the events complained of herein, as evidenced by:

- his failure to remedy the lack of adequate, close, constant supervision and safety of Mr. Pharuns despite his actual and constructive notice that Mr. Pharuns was a "flight risk" and had a history of running away from school as reflected in seven DOE occurrence reports, DOE Annual review report, numerous NYPD missing persons reports and his own personal knowledge;

- his creation of a policy and custom at the Cox School of failing to adequately, closely, constantly, supervise and ensure Mr. Pharuns' safety by continually allowing Mr. Pharuns to leave the Cox School while under Cox School/DOE school custody and control;

- his gross negligence in supervising subordinates that continually allowed Mr. Pharuns to repeatedly leave the Cox School while under Cox School/DOE school custody and control despite his actual and constructive notice of Mr. Pharuns' history of being a "flight risk" and running away from school;

- his deliberate indifference by failing to act on the information contained in six prior DOE occurrence reports, Annual conference review report, NYPD filed missing person's reports and his own personal knowledge and not implementing procedures and protocols to adequately ensure Mr. Pharuns' safety and adequate, close, constant supervision while under Cox School/DOE school custody and control.

14

95.     The Defendant Jason Albin deprived Mr. Pharuns of his rights and guaranteed protections in violation of 42 U.S.C. section 1983.

96.     The defendant Jason Albin deprived Mr. Pharuns of his rights guaranteed under the 14th amendment.

97.     The deprivation by Jason Albin of Mr. Pharuns civil rights was a result of AP Albin's arbitrary action outlined above where he exhibited gross indifference by failing to ensure that Mr. Pharuns, who had a well-documented DOE history of running away from Cox School/ DOE school while under DOE school custody and control was adequately, closely and constantly supervised at all times while in Cox School/DOE school custody and control.

98.     Defendant Jason Albin's gross indifference to his long standing actual and constructive notice that Mr. Pharuns necessitated constant supervision, a busing paraprofessional for close supervision, was unable to travel safely, placed himself in jeopardy when alone and was a "flight risk," shocks the conscience.

99.     Defendant Jason Albin's gross indifference to the emergent necessity of adopting protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control, despite his long standing actual and constructive notice that Mr. Pharuns necessitated constant supervision, a busing paraprofessional for close supervision, was unable to travel safely, placed himself in jeopardy when alone and was a "flight risk," shocks the conscience.

100.   Jason Albin's gross indifference by failing to adopt protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control, despite his long standing actual and constructive notice that Mr. Pharuns necessitated constant supervision, a busing paraprofessional for close

supervision, was unable to travel safely, placed himself in jeopardy when alone and was a flight risk, shocks the conscience.

101.    Defendant Jason Albin had a two year time period for reflection to ensure that Mr. Pharuns' DOE well documented need for adequate, close, constant supervision was addressed and implemented.

102.    Despite such knowledge, Defendant Jason Albin failed to take any action whatsoever in regards to securing the safety and adequate, close and constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control.

103.    As a proximate cause of Defendant Jason Albin's aforementioned failures, on July 27, 2010, Mr. Pharuns, for the seventh time, "went missing," when John Doe who was scheduled to give him a ride home from school (presumably a para professional or school bus aide), failed to appear at the Cox School.

104.    As, a result of Defendant Jason Albin's deliberate indifference and gross negligence, Mr. Pharuns was lost for several days and was ultimately stopped, detained and arrested in a train station by members of the NYPD.

105.    Mr. Pharuns permanent intellectual disability, fear, confusion, disorientation, and inability to communicate prompted the untrained officers to arrest Mr. Pharuns for attempting to gain access to the transit system without a metro card.

106.    During the course of his unwarranted arrest, Mr. Pharuns was pepper sprayed, placed in a choke hold, thrown onto the ground, and repeatedly punched by NYPD police officers.

107.    Mr. Pharuns sustained physical injuries, suffered and continues to suffer severe emotional, mental and psychological harm.

## SECOND CAUSE OF ACTION

### *Monell Claim*

108.    The Plaintiff repeats and realleges each and every allegation set forth above numbered "1" through "107" inclusive with the same force and effect as if more fully set forth at length herein.

109.    Defendant Jason Albin exhibited a policy and custom wherein the acts and omissions of the DOE John Doe Superintendent and AP Jason Albin represented an official policy of failing to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control.

110.    Defendant DOE exhibited a policy and custom wherein the acts and omissions of the DOE John Doe Superintendent and AP Jason Albin represented an official policy of failing to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control.

111.    Defendant Jason Albin as Assistant Principal of the Cox School was a final policy maker as evidenced by his final policymaking authority in the management of the Cox School and his conduct in failing to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control represents official district policy within the purview of the Cox School and DOE.

112.     Defendant Jason Albin's gross, deliberate indifference by failing to adopt protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control, despite his long standing actual and constructive notice that: as of July 2010, six prior OORS DOE reports were filed that documented Mr. Pharuns history of running away from the DOE/Cox School, Mr. Pharuns

17

necessitated constant supervision, a busing paraprofessional for close supervision, was unable to travel safely, placed himself in jeopardy when alone and was a "flight risk," shocks the conscience.

113.     Defendant DOE was, and is, a final policy maker as evidenced by the DOE John Doe Superintendent's final policymaking authority in the management of the DOE school system throughout New York City.

114.     DOE's failure to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control represents official district policy within the purview of the Cox School and DOE.

115.     The John Doe Superintendent of the DOE was notified at 9:45am on 12/11/2008 regarding the December 11, 2008 DOE Occurrence report.

116.     The John Doe Superintendent of the DOE was contacted at 8:35 am on May 21, 2009 and notified of the May 21, 2009 DOE Occurrence report.

117.     The John Doe Superintendent of the DOE was contacted on 12:50pm on May 13, 2010 regarding the May 10, 2009 DOE Occurrence report.

118.     As of July 2010, the John Doe Superintendent of the DOE was also aware of the six prior OORS DOE reports that documented Mr. Pharuns' history of running away from the DOE/Cox School.

119.     Defendant DOE's gross, deliberate indifference by failing to adopt protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control, despite its long standing actual and constructive notice that: as of July 2010, six prior OORS DOE reports were filed that documented Mr. Pharuns history of running away from the DOE/Cox School, Mr. Pharuns

18

necessitated constant supervision, a busing paraprofessional for close supervision, was unable to travel safely, placed himself in jeopardy when alone and was a "flight risk," shocks the conscience.

120.    Despite such actual and constructive notice the DOE John Doe Superintendent and Defendants DOE and Jason Albin were deliberately indifferent in failing to adopt protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control.

121.    Defendants Jason Albin, DOE and DOE John Doe Superintendent as final policy makers in failing to adopt protocols and procedures to ensure the safety and adequate, close, constant supervision of Mr. Pharuns while under Cox School/DOE school custody and control, were the proximate cause of Mr. Pharuns injuries.

122.    Defendants DOE and Jason Albin, did not supervise Mr. Pharuns with the same degree of care as a DOE policy maker of ordinary prudence would exercise in comparable circumstances.

123.    The Defendants, deprived Mr. Pharuns of such adequate, close, constant supervision and violated his civil rights in violation of 42 United States Code Section 1983:

    a.    in improperly supervising and/or training the aides and/or teachers and/or other personnel responsible for Mr. Pharuns;

    b.    in employing and/or utilizing insufficiently trained and unqualified personnel for purposes of adequately, closely and constantly supervising, monitoring, watching, moderating, safeguarding and/or attending to Mr. Pharuns;

19

     c.   in improperly and gross negligently leaving Mr. Pharuns under the control and/or supervision and/or charge of such improperly trained and unqualified aides and/or teachers;

     d.   in willfully, with deliberate indifference and gross negligence, failing to properly adequately, closely and constantly, supervise, monitor, watch, moderate and safeguard Mr. Pharuns by allowing him to repeatedly leave the Cox School/DOE unsupervised while under DOE school custody and control on six prior occasions despite being instructed to do so.

124.    At all times hereinafter mentioned, the Defendant, DOE, their employees, agents and/or servants, were acting under color of statutes, ordinances, regulations, customs and usages of the State of New York, County of Kings.

125.    At all times hereinafter mentioned, the Defendant, Jason Albin was acting under color of statutes, ordinances, regulations, customs and usages of the State of New York, County of Kings.

126.    As a result of such gross negligence and deliberate indifference on behalf of the Defendants and its employees, agents and/or servants, Mr. Pharuns sustained injuries when he was negligently allowed to leave the Cox School/DOE school on or about July 27, 2010 while under DOE custody and control, for the seventh time, and became lost, disoriented and confused in attempting to find his way home.

127.    As a result of such negligence on behalf of the Defendants and its employees, agents and/or servants, Mr. Pharuns was lost for several days and was ultimately stopped, detained and arrested in a train station by members of the NYPD.

128.    Mr. Pharuns permanent intellectual disability, fear, confusion, disorientation, and inability to communicate prompted the untrained officers to arrest Mr. Pharuns for attempting to gain access to the transit system without a metro card.

129.    During the course of his unwarranted arrest, Mr. Pharuns was pepper sprayed, placed in a choke hold, thrown onto the ground, and repeatedly punched by NYPD police officers.

130.    Mr. Pharuns sustained physical injuries, suffered and continues to suffer severe emotional, mental and psychological harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court grant the following relief jointly and severally against Defendants:

a.   Compensatory damages in an amount to be determined at trial for the physical, psychological and emotional injuries sustained by Mr. Pharuns as a result of the events alleged herein.

b.   An order awarding Plaintiff reasonable attorneys' fees, together with the costs of this action pursuant to § 1983.

c.   An award of punitive damages due to Defendants' collective actions herein-above alleged, were willful and grossly negligent.

d.   Such other further relief as the Court may deem appropriate.

Dated:  New York, NY
          March 24, 2015

BY: ____/s/
Bruce Richardson
Law Office of Bruce Richardson
14 Wall Street, 20th floor
New York, NY 10005
Tel: (800) 985-9007 Email:
bruce@lawofficesofbrucerichardson.com
*For Plaintiff Ricardo Michel Jean Pharuns*